UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CLARENCE JOHNSON, | : | Case No. 1:12-cv-805 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| OFFICER MATTHEW LATZY, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 18) AND
DEFENDANT's MOTION TO STRIKE (Doc. 26)**

This civil action is before the Court on Defendant's Motion for Summary Judgment (Doc. 18) and the parties' responsive memoranda (Docs. 25, 27). Also before the Court is Defendant's Motion to Strike (Doc. 26) and Plaintiff's Response in Opposition (Doc. 28).

## I.  BACKGROUND FACTS

Plaintiff Clarence Johnson, the father of Decedent Erica Collins, brings Section 1983, wrongful death, and battery claims against Defendant Officer Matthew Latzy, ("Latzy") who shot and killed Plaintiff's daughter on October 12, 2012 (Doc. 1). Latzy had responded to a 911 call in relation to a domestic dispute between Erica Collins and her sister Elisabeth Collins. When Latzy arrived, he saw Decedent exiting her residence and heading toward a car while brandishing a knife. Decedent crouched down by the front tire of the car as if to slash the tire. Latzy ordered Decedent to put the knife down

and she did not do so. The encounter unfolded rapidly, and Latzy felt threatened by Decedent. He shot her twice and killed her.

## II. UNDISPUTED FACTS[1]

1. Collins called the police (911) after a dispute with her sister, Elisabeth.

2. Collins was inside her apartment when Police Officer Matthew Latzy arrived.

3. After Officer Latzy got out of his car, Collins came out of her apartment building with a knife in her hand, moving toward a car with people standing by it.

4. Officer Latzy took out his gun while Collins was crouched down by the tire.

5. Officer Latzy ordered Collins to put down the knife.

6. Collins did not put down the knife immediately while she was in a crouched position by the front tire.

7. Collins told the officer that he can't just let Elisabeth drive off.

8. With the knife in her hand, Collins stood up from a crouched position.

9. With the knife in her hand, Collins turned to face the officer.

10. Collins then dropped the knife, raised her hands and said "No."

11. Officer Latzy shot Collins twice, once in the head and once in the chest.

12. Officer Latzy had a split-second to react to this rapidly evolving incident.

### III.   STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex*

---

[1] *See* Doc 27.

2

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV. ANALYSIS

### A. Qualified Immunity

Defendant Latzy asserts that he was acting within the scope of his discretionary duties as a law enforcement officer and is therefore entitled to qualified immunity (Doc. 18). The defense of qualified immunity completely protects government officials performing discretionary functions from Section 1983 actions when sued in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an

immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id*. at 526. As a result, the Court must resolve qualified immunity questions as the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Qualified immunity extends to individuals performing discretionary functions unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. A right is "clearly established if [a] reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). There is generally a two-step analysis to determine whether a police officer is entitled to qualified immunity. *Thacker v. Lawrence County*, 182 Fed. Appx. 464, 468-69 (6th Cir. 2006)(citing *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). The first step asks whether the police officer violated a constitutional right. The second determines whether the right violated was clearly established.

Defendant Latzy contends he did not violate the Constitution, citing the factors enumerated in *Graham v. Connor*, 490 U.S. 386 (1989), which courts use to evaluate use of force. The factors are 1) the severity of the crime; 2) whether the suspect posed an immediate threat to the officers or others; and 3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Id*. at 396. "The calculus of reasonableness must embody allowance for the fact police officers are often forced to

make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 397.  And when a suspect poses a threat of serious physical harm to the officer or others, an officer may use deadly force.  *Hocker v. Pikeville City Police Dep't*, 738 F.3d 150, 154 (6th Cir. 2013); *see also Bell v. City of E. Cleveland*, 1997 U.S. App. LEXIS 28738 at *7 (6th Cir. 1997) (*quoting Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Plaintiff bases his Response in opposition to Defendant's motion in part on statements culled from police reports—specifically statements from two eyewitnesses, Shirelle Walton and Tanisha Miles (Doc. 28).  By separate motion Defendant attacks such statements as hearsay (Doc. 26, citing *Miller v. Field*, 35 F.3d 1088, 1092-92 (6th Cir. 1994) (statements by third-parties are not admissible in accordance with Fed. R. Evid. 803(8), even though they are contained in a police report).  Having reviewed the authorities proffered the Court finds Defendant's position well taken and **GRANTS** Defendant's motion to strike.  The Court therefore disregards the hearsay statements.

The essence of Plaintiff's Response is that Decedent Erica Collins dropped the knife before she was shot, so that Defendant's reaction was unjustified (Doc. 25). Plaintiff further contends that photos of the scene establish that Collins could not have advanced toward Defendant in a threatening manner because her body was ultimately positioned next to the front tire of the vehicle where she had been standing.  *Id.*  Plaintiff further argues Defendant is not entitled to qualified immunity because shooting an

5

unarmed suspect has been clearly established as excessive use of force since *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). *Id*. Finally, Plaintiff contends Decedent was at most guilty of a non-violent misdemeanor as she "never made any type of threatening movement toward anyone." *Id*.

In Reply, for purposes of the motion, Defendant accepts the claims that Decedent dropped the knife, raised her hands, and said "No" before she was shot (Doc. 27). Even under such factual scenario, Defendant contends that he is entitled to qualified immunity. *Id*. Defendant argues that the photographic evidence attached to Elisabeth's affidavit indisputably shows that Decedent's head was by the front tire, and her feet by the passenger door, such that no reasonable jury could conclude Decedent did not advance toward Defendant. *Id*. Moreover, Defendant contends the facts show he was confronting, in a rapidly evolving situation, an unpredictable person who had already refused his shouted command to drop the knife. *Id*. From Defendant's viewpoint, any reasonable officer would have viewed Decedent's movement toward him as hostile and aggressive. *Id*.

Having reviewed this matter, the Court finds Defendant's position well-taken that Decedent's movements were reasonably perceived by Defendant as hostile and aggressive. Defendant was responding to a 911 call regarding a domestic dispute when he saw Decedent brandishing a knife. The encounter unfolded rapidly. Decedent did not drop the knife when ordered to do so. The photographic evidence establishes that

Decedent moved toward Defendant. Defendant had nowhere to easily retreat to as he was caged in by the position of his vehicle. Taken together, the Court finds the facts show Defendant reasonably understood that Decedent posed a threat of serious physical harm to himself or others. As such, though regrettable, his use of deadly force was permissible under the law. *Hocker v. Pikeville City Police Dep't*, 738 F.3d 150, 154 (6th Cir. 2013); *see also Bell v. City of E. Cleveland*, 1997 U.S. App. LEXIS 28738 at *7 (6th Cir. 1997) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Defendant therefore did not violate any constitutional rights and he is entitled to qualified immunity. *Gaddis v. Redford*, 364 F.3d 763, 776 (6th Cir. 2004) ("Lethal force is justified in order to protect a fellow officer or a civilian from a threat of serious physical harm . . . . An attack with a knife certainly meets that criterion").

### B. State Claims

As the Court has found Defendant Officer Latzy acted reasonably and in self-defense, the wrongful death and battery claims against him are properly dismissed. *Ewolski v. City of Brunswick*, 287 F.3d 492, 517 (6th Cir. 2002). In addition, Latzy is entitled to state tort immunity under Ohio Revised Code 2744.03(A)(6)(b) for state claims asserted by Plaintiff. An officer who uses deadly force in appropriate circumstances is entitled to statutory immunity. *Kendzierski v. Carney*, C.A. No. 22739, 2005-Ohio-6735, 2005 Ohio App. LEXIS 6066, ¶27 (Court App. Ohio, Dec. 21, 2005).

## V.   CONCLUSION

The Court concludes that Defendant Officer Latzy acted reasonably with regard to his use of force against Decedent Erica Johnson on October 13, 2012.   Defendant therefore violated no constitutional right and he is entitled to qualified immunity. Accordingly the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 18), **GRANTS** Defendant's Motion to Strike (Doc. 26), and **DISMISSES** this case from the Court's docket.

The Clerk shall enter judgment accordingly, whereupon this case is **CLOSED** in this Court.

**IT IS SO ORDERED**.

Date:  2/4/15                                                                          *s/ Timothy S. Black*
                                                                                        Timothy S. Black
                                                                                        United States District Judge